IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CAROLYN DAVLIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:12-cv-585 -TFM |
| | ) | [wo] |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In December, 2009, Carolyn Davlin ("Plaintiff" or "Davlin") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on December 11, 2009, due to joint problems, chronic obstructive pulmonary disease ("COPD"), and depression. (Tr. 123-133, 150). Her claims were denied by an administrative law judge ("ALJ") (Tr. 16-30), and the Appeals Council denied her request for review, making the ALJ's decision the final agency decision for purposes of judicial review. (Tr. 1-5). Pursuant to 28 U.S.C. § 636 (c), the parties have consented to entry of final judgment by the United States Magistrate Judge. Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied.  *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

 "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion  of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings.  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.

1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

---

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### III. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was 51 years old on her alleged onset date of disability and was 52 years old on the date of the ALJ's decision. (Tr. 29, 123, 151-52). Davlin attained a high school equivalency degree and worked in the relevant past as a security guard, traffic dispatcher or checker, apartment manager and truck driver. (Tr. 151-153). After the alleged onset of disability in December 2009, Davlin worked 20 hours a week as a newspaper carrier. (Tr. 39-41).

At the hearing before the ALJ, Davlin testified that she has "constant" pain in her back, knees and shoulders. (Tr. 41). She testified that her pain is made worse by cold damp weather and that her pain affects her ability to sleep. (Tr. 41-42). She can stand for no more than a few minutes "maybe 15 at the most". (Tr. 43-44). She is not able to sit through an hour long television show. (Tr. 48-49). She testified that she is not able to

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

afford regular medical care. Her treatment consists mainly of taking Advil in very large amounts (about 100 every three to four days). She testified that even when taking this large amount of medication, her pain is still sometimes unbearable. (Tr. 41).

At the hearing the ALJ asked Eric Anderson, a vocational expert, ("VE") to assume a hypothetical individual of Plaintiff's age, education, and work experience who could perform sedentary work that did not require using the lower extremities for pushing or pulling and that was low-stress requiring only occasional decision making, judgment, and changes in the work setting and did not involve interaction with the general public. (Tr. 51-52). The VE testified that such an individual could not perform any of Plaintiff's past relevant work, but could perform the sedentary jobs of lens inserter, surveillance system monitor, and assembler. (Tr. 52).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 18, 2008, her alleged onset date. (Tr. 23). At step two, the ALJ determined that Plaintiff's major depressive disorder, dysthymic disorder, alcohol dependence in sustained full remission, degenerative disc disease, sciatica, degenerative joint disease of the knees and ankles, and osteoarthritis were "severe" impairments. (Tr. 23). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed at 20 C.F.R. pt. 404 subpt. P, app. 1. (Tr. 23-26). The ALJ found Plaintiff had the residual functional capacity for sedentary work with no use of her lower extremities for pushing and pulling, in a low stress environment, with only occasional decision making, judgment, and changes with the work setting and only occasional interaction with the public. (Tr. 26).

The ALJ concluded based on vocational expert testimony, that although Plaintiff could not perform any of her past relevant work, she was capable of performing jobs that existed in significant numbers in the national economy and was therefore not disabled. (Tr. 30).

## IV.  MEDICAL HISTORY

Davlin alleges that she became disabled in December 2009.  Prior to that date in January 2001, Dr. Samuel Combs diagnosed Plaintiff with moderate degenerative arthritis in both knees, and performed surgery on her left knee.  (Tr. 201-02, 207).  In check-ups prior to the surgery, Dr. Combs noted "eventually she will more than likely need knee replacements."  (Tr. 208).  About one month after surgery, Plaintiff reported "some pain" in her left knee but said that she was "at least 50% better."  Dr. Combs released her to work with some (unspecified) limitations on lifting.  (Tr. 206).  In April 2001, Plaintiff reported that she still had some left knee symptoms but that she had "obtained appreciable relief" from the surgery.  She declined right knee surgery.  Dr. Combs observed that she had full range of motion in the knee, with good stability and a return to normal strength. He released Plaintiff from treatment.  (Tr. 206).  Also, during 2001, Dr. Combs noted that Plaintiff had smoked a pack and a half of cigarettes per day for 27 years, that she continued to smoke, and that she used an albuterol inhaler as needed.  (Tr. 201).

The record next reflects Plaintiff received medical treatment in August 2009, when she went to the emergency room and reported a fever, cough, chills and generalized weakness.  Chest x-rays showed no acute disease; care providers diagnosed a virus.  (Tr. 211-13).  Care providers also observed that Plaintiff had a "[n]ormal joint range of

motion" and "[n]o motor or sensory deficits." (Tr. 212). Thereafter in early December 2009, Plaintiff went to the emergency room and reported respiratory problems. Care providers diagnosed COPD, asthma, and pneumonia and noted "chronic" diagnoses of depression, hypertension, COPD, and lung disease. (Tr. 244-45, *see also* Tr. 248).

In mid-December 2009, after Plaintiff alleges that she became disabled, she went to the Southeast Alabama Medical Center ("SAMC") emergency room for treatment of respiratory symptoms. She continued to smoke a pack of cigarettes per day. An examination showed that Davlin had normal range of motion in her arms and legs, and normal sensation and motor strength. Care providers diagnosed pneumonia, prescribed an antibiotic, and discharged her home that same day, with a release to return to work the following week. (Tr. 229-33).

Later that month, Plaintiff returned to a SAMC clinic, which provided free medical care, for follow-up regarding pneumonia and to discuss her medications and diet. A care provider noted "chronic diagnoses" of depression, hypertension, COPD, lung disease, stroke, hyperlipidemia, and hypothyroidism, but did not record reports of back, shoulder, or knee symptoms (Tr. 242-43, 246-47; Pl. Br. 17). Care providers from the clinic provided Plaintiff with medication samples and arranged for her to receive free medication. (Tr. 247).

In January 2010, Davlin, completed a questionnaire in relation to her claims for Social Security disability benefits. She said that she lived with her sons and her cousin's ex-wife, and that her activities included taking care of her sons, taking care of a pet dog, preparing at least simple meals, doing laundry, vacuuming, straightening up the house,

driving, shopping for groceries and clothing, paying bills, and playing cards. Davlin explained that she cannot perform household chores with the speed she once could because her "hands cramp up and [her] legs start to hurt. Also she can no longer perform yard work. (Tr. 167- 174). As a result of her pain, she is "constantly moving about" during the day and is "up and down all night". (Tr. 167-68). Plaintiff's house mate Kerry Savage, completed a similar form confirming Davlin's reports. (Tr. 175-82)..

In February 2010, Randall Jordan, Psy.D. evaluated Davlin psychologically in relation to her Social Security claims. After examining Davlin, Dr. Jordan opined that she did not have any limitations in her ability to carry out simple instructions, and that she could do multi-step tasks without some degree of supervision. (Tr. 258-60). Dr. Jordan diagnosed "Major Depressive Disorder, recurrent mild" and "chronic pain". (Tr. 259). Davlin's prognosis was "guarded because of the chronic nature of [her] problems and issues." (Tr. 260). During the evaluation Davlin was cooperative, motivated and no malingering was noted. Dr. Jordan concluded: "Physical issues seem to be the primary limiting factor" in Ms. Davlin's ability to function in competitive work. *Id.* State agency psychiatrist Robert Estock, M.D., and a state agency reviewing physician, Robert Heilpern, M.D., subsequently reviewed the record and opined that Plaintiff's impairments did not meet the statutory standard for disability. (Tr. 27-29, 58-59, 261).

In March 2010, Davlin returned two times to the free clinic for check-ups, including a blood pressure check. Care providers observed that she appeared well and in no distress. They diagnosed hypertension, hyperlipidemia, migraine headaches, and lung disease. (Tr. 280-83).

On February 16, 2011, Samuel R. Banner, M.D., performed an orthopedic examination on Davlin for the State agency. (Tr. 285-96). Davlin reported constant bilateral knee pain, and back pain. She explained that her back had been hurting for 10 years, but admitted that her back had not been medically evaluated. She explained that sometimes her knees "give away" and she falls. (Tr. 286). At that time Plaintiff was five feet tall and weighed 254 pounds. She worked part-time as a newspaper carrier.

On examination, Dr. Banner observed that Davlin had full 5/5 strength in her arms and normal range of motion in her arms and fingers, with normal fine and gross manipulation. (Tr. 287). Dr. Banner also observed that Plaintiff had a "broad-based choppy gait," had difficulty getting on and off the examination table, was unable to perform the "tiptoe walk". He further observed that straight leg raises were positive but Plaintiff demonstrated normal range of motion in her back. Plaintiff had cracking sounds in her knees and x-rays showed osteoarthritic changes, but Plaintiff demonstrated 4/5 strength in her legs and could heel/toe walk without an assistive device. (Tr. 288 ). Dr. Banner opined that Plaintiff had extreme limitations in functioning that would preclude all work activity. In particular, Dr. Banner opined that Plaintiff could not lift more than 10 pounds, sit or walk for more than one hour each in an eight-hour day, or use her dominant right hand more than occasionally for reaching, handling, fingering or feeling. (Tr. 290-95).

## V.  ISSUES

Davlin raises two issues for judicial review:

(1) Whether the Commissioner's decision should be reversed since the ALJ's conclusion concerning Davlin's residual functional capacity was not reasonable because he failed to properly credit the opinion of Dr. Banner, a state agency examining physician and he failed to address the combined impact of Davlin's obesity and her other severe impairments?  (Doc. 12-1 at 1)

(2) Whether the Commissioner's decision should be reversed because the ALJ improperly discounted Davlin's statements concerning pain?  (Doc. 12-1 at 1)

## VI.  DISCUSSION

### A.  The ALJ's Residual Functional Capacity Assessment was Reasonable.

A residual functional capacity assessment is used to determine the claimants' capacity to do as much as they are possibly able to do despite their limitations.  *See* 20 C.F.R. § 404.1545(a)(1) (2010).  An RFC assessment will be made based on all relevant evidence in the case record.  *Id.*; *Lewis v. Callahan*, 125 F.3d at1440.  The Commissioner's decision is due to be affirmed "if it is supported by substantial evidence and the correct legal standards were applied."  *Kelley v. Apfel,* 185 F. 3d 1211, 1213 (11th Cir. 1999).  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Moore v. Barnhart,* 405 F. 3d 1208, 1211 (11th Cir. 2005).

The ALJ concluded that the medical and other record evidence:

> warrants a significantly decreased residual functional capacity, from the full range of skilled very heavy work to a reduced range of unskilled light work. The claimant has not shown that her medical condition warrants additional limitations in any identified basic work activity for the duration period. The residual functional capacity is supported by, *inter alia,* the claimant's daily activities as described as described in his [sic] testimony and her total lack of disabling objective medical testing, and her part-time work.

(Tr. 28). Davlin argues that this RFC assessment is not reasonable because the ALJ failed to properly credit the opinion of Dr. Banner, a state agency examining physician and he failed to address the combined impact of Davlin's obesity and her other severe impairments.

Dr. Samuel R. Banner, a consulting physician, performed a musculoskeletal examination of Davlin on February 16, 2011. (Tr. 285-96). As a result of his examination and x-rays performed at the same time, Dr. Banner completed a PCE form where he opined that Davlin could only occasionally lift or carry up to 10 pounds; walk for 15 minutes at a time or up to one hour total in a work day; stand 15 minutes at a time or one hour total, sit for four hours at a time or 8 hours total; and use her right dominant hand occasionally for reaching, handling, fingering and feeling. She also had several postural and environmental limitations. (Tr. 290-94).

> The ALJ, however, discounted Dr. Banner's opinions in the PCE form finding
>
> it is totally inconsistent with the narrative containing the findings of the consultative examination, and is inconsistent with her ability to work part-time. For example, the narrative indicates that the claimant has not fine manipulation limitations while the PCE form indicates that function can be performed only occasionally.

(Tr. 26). The ALJ also discounted Dr. Banner's opinion because it is based on Plaintiff's subjective statements and a one-time examination, which were inconsistent with other

treatment records.[5]  Indeed, Davlin told Dr. Banner that she got no relief from her 2001 knee surgery, treatment records show that after the surgery, Davlin exhibited a full range of motion in her knee, with good stability and a return to normal strength, and that she admitted improved symptoms.  (Tr. 26-27; *compare* Tr. 206 *with* Tr. 286).  Moreover, the treatment record shows that in 2009 and 2010 at times when Davlin sought treatment for a virus, headaches and hypertension, examinations by care providers showed normal range of motion in her joints, with no motor or sensory deficits.  (Tr. 25; *see* Tr. 212, 231).  The ALJ also discounted Dr. Banner's findings because they were inconsistent with evidence that at the time of Dr. Banner's examination, Davlin worked part-time as a paper carrier in spite of her impairments.  (Tr. 286).

Additionally, Davlin argues that the ALJ failed to consider the combined impact of her severe impairments, including obesity.  However, the ALJ explicitly found that obesity was a severe impairment at step two of the sequential evaluation.  (Tr. 21).  The ALJ continued with the sequential evaluation process and considered all of Davlin's symptoms in assessing the RFC.  (Tr. 23, *see also*, Tr. 21 (noting the ALJ considered Plaintiff's combined impairments.))  Moreover, Davlin fails to demonstrate that her obesity created functional limitations beyond those incorporated into the ALJ's residual functional capacity finding.  Indeed, Davlin's treatment providers, as well as Dr. Banner, did not identify any obesity-related limitations in functioning.  (Tr. 25-26; 286-289).

The law tasks the ALJ with weighing the conflicting medical evidence and making an administrative finding regarding the Plaintiff's RFC.  *See* 20 C.F.R § 404.1527(b)

---

[5]  The record does not indicate that Dr. Banner ever reviewed Davlin's other medical treatment records.

(ALJ will consider medical source opinions with the rest of the relevant evidence.); *Phillips v. Barnhart,* 357 F.3d 1232, 1238 (11th Cir. 2004) (the ALJ will "assess and make a finding about the [claimant's] residual functional capacity based on all the relevant medical and other evidence"). The court finds that the ALJ carefully considered the entire record, including all the medical evidence, which he summarized in detail, (Tr. 25-28) in finding Davlin had the RFC to perform a reduced range of unskilled light work. (Tr. 28). Accordingly, the court concludes that based upon a review of the record as a whole, the ALJ's RFC finding is supported by substantial evidence. *Moore,* 405 F.3d at 1211.

    **B.    The ALJ Did Not Improperly Discount Plaintiff's Subjective Complaints of Debilitating Pain.**

Davlin argues that the ALJ improperly discounted Plaintiff's complaints of debilitating pain. The Social Security Regulations provide that a claimant's subjective complaints of pain, alone, cannot establish disability. Rather the Regulations describe additional objective evidence that is necessary to permit a finding of disability. *See* 42 U.S.C.§ 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater,* 67 F. 3d1553, 1560 (11th Cir.

1995); *Holt v. Sullivan,* 921 F.2d 1221, 1223(11th Cir. 1991).

In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen,* 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry,* 782 F. 2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support, then the testimony must be accepted as true. *Hale,* 831 F.2d at 1012.

Davlin testified at the hearing before the ALJ that she has "constant" pain in her back, knees and shoulders. (Tr. 41). She testified that her pain is made worse by cold damp weather and that her pain affects her ability to sleep. (Tr. 41-42). She can stand for no more than a few minutes "maybe 15 at the most". (Tr. 43-44). She is not able to sit through an hour long television show. (Tr. 48-49). She testified that she is not able to afford regular medical care. Her treatment consists mainly of taking Advil in very large amounts (about 100 every three to four days). She testified that even when taking this large amount of medication, her pain is still sometimes unbearable. (Tr. 41)

The ALJ considered Davlin's testimony and discussed the medical evidence. (Tr. 24-28). The ALJ acknowledged that Davlin's

> "medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not

credible to the extent they are inconsistent with the above residual functional capacity assessment."

(Tr. 28). The ALJ did not credit Davlin's complaints of disabling pain for the following specific reasons. First, Plaintiff did not report knee or back or shoulder problems when she presented for blood pressure checks or for treatment of viruses or headaches. (Tr. 25-26, 28; *see, e.g.,* Tr. 211-13, 280-83). Second, medical records showed that Davlin's treating doctors found a normal range of motion in Plaintiff's joints with no motor or sensory deficits. (Tr. 25, 28; *see* Tr. 212, 231). Third, Davlin's treatment providers prescribed only conservative treatment and did not place any restrictions on her activities – in fact, Plaintiff was released to return to work on December 21, 2009, after a visit to the Emergency Department on December 14, 2009. Fourth, in spite of her alleged disabling pain, Plaintiff worked part-time as a newspaper carrier and performed other household activities, albeit at a slow rate and sometimes with assistance. (Tr. 28; *see* Tr. 39-41, 167-74).

Davlin argues that the ALJ erred in finding that she failed to seek treatment or to report back, knee and shoulder pain and asserts that she could not afford medical care. (Pl. Br. 17-18). However, Plaintiff admits that she had access to some free medical care and free mediation. (Pl. Br. 4, 17; *see e.g.,* Tr. 247 (medical records arranging for Plaintiff to receive free medication)). Plaintiff further argues that her treatment at the free clinics was primarily for acute respiratory ailments, and that under those circumstances she would have no reason to mention her joint pain. (Pl. Br. 17-18). However, the record shows that the free clinic provided blood pressure checks and documented reports of

symptoms such as headaches and depression, as the ALJ correctly noted. (Tr. 25; *see* Tr. 242-43, 280-83).

The ALJ retains discretion not to credit the claimant's testimony of pain and other symptoms. *See Holt,* 921 F. 2d at 1223. When the ALJ decides not to fully credit the claimant's testimony, the ALJ must articulate the reasons for that decision. *Id.* In other words, even where the medical record includes objective evidence of pain, and where the ALJ acknowledges that the claimant experiences some pain, the ALJ may conclude that the degree of pain is not disabling in light of all the evidence. *See Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987). Indeed, it is not inconsistent for the ALJ to find a claimant suffers pain, and yet is not so severely impaired as to meet the stringent test for disability imposed by the Act. *See Arnold v. Heckler,* 732 F. 2d 881, 884 (11th Cir. 1984).

Ergo, it was reasonable for the ALJ to find Plaintiff's subjective complaints of disabling pain lacked credibility. (Tr. 28). *Jones v. Bowen,* 810 F.2d 1001, 1004 (11th Cir. 1986)(affirming Commissioner's credibility determination given absence of treatment and pain medications for alleged symptoms). Accordingly, the court concludes that because of the ALJ's reasons, which were supported by record evidence, Davlin's argument that the ALJ improperly discounted her subjective complaints of pain must fail. *See Wilson v. Barnhart,,* 284 F. 3d 1219, 1227-28 (11th Cir. 2002)(upholding ALJ's credibility evaluation which discounted plaintiff's "subjective assertions of pain").

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.** A separate judgment is entered herewith.

DONE this 22nd day of May, 2013.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE